IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

CHARLES HARRIS,                  :   Civil No. 3:20-cv-631
                                 :
    Plaintiff                    :   (Judge Mariani)
                                 :
    v.                           :
                                 :
UNITED STATES OF AMERICA,        :
                                 :
    Defendant                    :

**MEMORANDUM**

Plaintiff Charles Harris ("Harris"), a federal inmate who was housed, at all relevant times, at the United States Penitentiary, Allenwood, in White Deer, Pennsylvania ("USP-Allenwood"), filed this action against the United States under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346, 2671, *et seq.*[1] Before the Court are the parties' cross-motions for summary judgment pursuant to Federal Rule of Civil Procedure 56. (Docs. 47, 48). For the reasons set forth below, the United States' motion (Doc. 47) for summary judgment will be denied and Harris' motion (Doc. 48) for summary judgment will be deemed withdrawn.

I.    **Factual Background & Procedural History**

Harris alleges that on February 22, 2019, he tripped on a raised area of the main sidewalk at USP-Allenwood when he was walking from his housing unit to a computer class

---

    [1] Harris also named the Federal Bureau of Prisons as a Defendant in this action; however, the Court previously dismissed the Bureau of Prisons because the United States is the only proper party to a FTCA claim. (Docs. 28, 29).

in the education department. (Doc. 1, pp. 1, 3). When he fell, Harris allegedly twisted his right foot/ankle. (*Id.* at p. 3). Harris asserts that another inmate saw him fall. (*Id.*).

On February 25, 2019, Harris presented to sick call and was informed that he would be treated by a foot doctor outside of the prison. (*Id.*). Harris underwent an x-ray which revealed a fracture in his right foot. (*Id.*). His leg and foot were placed in a cast, and he used a wheelchair during the recovery process. (*Id.*). After the cast was removed, Harris' foot was placed in a walking boot. (*Id.* at p. 4). As a result of the fall, Harris asserts that he has chronic pain and lost full movement of his foot. (*Id.* at p. 5).

Harris contends that USP-Allenwood was built approximately a quarter century ago, with numerous uneven areas in the sidewalks that have developed over time. (*Id.* at pp. 4, 8). He alleges that these uneven areas create a risk for staff members and inmates, who walk on the sidewalks every day. (*Id.* at pp. 4, 5, 9). Because prison staff members use the sidewalks on a daily basis, Harris contends that they are familiar with the condition of the sidewalks and the particular defect over which Harris claims he tripped. (*Id.* at p. 5). Harris alleges that the BOP "had notice of the dangerous condition" before the date of his incident, because other prisoners and staff members previously fell, tripped, or stumbled in the same location. (*Id.* at p. 4).

In September of 2020, the United States moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). (Doc. 16). On July 15, 2021, the Court issued a Memorandum and Order granting the United States' motion for judgment on the

pleadings. (Docs. 28, 29). Harris filed an appeal to the United States Court of Appeals for the Third Circuit. (Doc. 31).

On December 20, 2021, the Third Circuit issued an Order directing the parties to address "whether the District Court erred in granting judgment on the pleadings because there is a dispute of material fact as to whether Harris was aware that the sidewalk on which he fell presented a known and obvious danger." *Harris v. United States*, No. 21-2394, Doc. 9 (3d Cir.). On May 2, 2022, Harris filed his brief in support of his appeal, arguing that the United States "failed to demonstrate by evidence (1) that plaintiff voluntarily used the hazardous sidewalks, and (2) that the plaintiff had an 'alternative choice' he could have taken instead of the hazardous walkways." *Id.*, Doc. 17 at p. 1. In response, the United States argued that the condition of the sidewalk was known to Harris, and he failed to take reasonable care in traversing the area. *Id.*, Doc. 19 at pp. 8-12. The Third Circuit ultimately remanded the matter "so that the District Court can consider whether the Government should have anticipated Harris's injury." *Harris v. United States*, No. 21-2394, 2022 WL 4533852, *4 (3d Cir. September 28, 2022). The Third Circuit explained that "[e]ven if the sidewalk differential were known or obvious to Harris, the Government would still be liable if it should have anticipated the harm despite such knowledge or obviousness." *Id.* at *3. The Third Circuit also questioned whether Harris "assumed the risk of harm by traversing the sidewalk." *Id.* at *4.

On March 23, 2023, the United States filed a motion for summary judgment and subsequently filed a supporting brief and statement of material facts. (Docs. 47, 52, 53). Following the United States' submissions, Harris filed an opposition brief and responsive statement of material facts. (Docs. 61, 62, 69). The United States' motion is ripe for disposition on the merits.

On March 27, 2023, the Clerk of Court received Harris' dispositive motion. (Doc. 48). Harris failed to file a brief in support of his motion and failed to file a statement of material facts. See LOCAL RULES OF COURT 7.5, 56.1. The Court, therefore, will deem this motion (Doc. 48) withdrawn. See LOCAL RULE OF COURT 7.5 ("If a supporting brief is not filed within [fourteen (14) days after the filing of any motion] the motion shall be deemed to be withdrawn.").

## II.   Statement of Undisputed Facts[2]

In February of 2019, Harris was an inmate at USP-Allenwood and was a resident of Building Unit 3B. (Doc. 52 ¶¶ 1-2; Doc. 69 ¶¶ 1-2). As a resident of Unit 3B, Harris was required to walk along the sidewalk in front of Unit 2 to access the education department.

---

[2] Local Rule 56.1 requires that a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 be supported "by a separate, short, and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried." LOCAL RULE OF COURT 56.1. A party opposing a motion for summary judgment must file a separate statement of material facts, responding to the numbered paragraphs set forth in the moving party's statement and identifying genuine issues to be tried. Id. Unless otherwise noted, the factual background herein derives from the parties' Rule 56.1 statements of material facts. (Docs. 52, 62, 69). To the extent the parties' statements are undisputed or supported by uncontroverted record evidence, the Court cites directly to the statements of material facts.

(*Id.* ¶ 3). In addition to the education department, "this building also houses commissary, laundry, religious services, passive recreation, psychology services, and the safety department." (*Id.* ¶ 4). When Harris wanted to access the education department, or any of the additional services housed in that building, he was required to walk along the sidewalk in front of Unit 2. (*Id.* ¶ 5).

From July 11, 2018 through February 28, 2019, Harris participated in Adult Continuing Education classes hosted in the education department. (*Id.* ¶ 6). Over the course of those seven and a half months, Harris attended approximately twenty-five (25) ACE classes, requiring no less than fifty (50) trips in front of Unit 2. (*Id.* ¶ 7). In February 2019, Harris attended "VT Business Info Process" in the education department on February 1, 2019, February 5, 2019, February 6, 2019, and February 21, 2019. (*Id.* ¶ 8).

Harris alleges that on February 22, 2019, at approximately 12:30 p.m., he departed his housing unit for the education department. (*Id.* ¶ 9). Harris further alleges that he tripped over a one (1) inch elevation on the sidewalk in the vicinity of Unit 2. (*Id.* ¶ 10). As a result of tripping over the sidewalk, Harris alleges that he "twisted his right foot/ankle." (*Id.* ¶ 11). The parties dispute whether Harris was walking with another inmate on this occasion. (*Id.* ¶ 12). Harris maintains that he was traveling alone, while the United States asserts that Harris was traveling with another inmate, who did not trip or fall. (*Id.*). Harris continued on his path and attended the VT Business Info Process class following the alleged fall. (*Id.* ¶ 13).

Charles Willoughby is the Complex Facility Manager at USP-Allenwood. (*Id.* ¶ 14). The United States asserts that Charles Willoughby reviewed the maintenance records and located two photographs that demonstrate the condition of the sidewalks in front of Unit 2 in 2019. (Doc. 52 ¶ 14). Harris contends that the photographs show the condition of the sidewalks on June 18, 2020. (Doc. 69 ¶ 14). The photographs demonstrate concrete walkways, approximately ten feet in width, surrounded on all sides by grassy lawn areas, with slight erosion in the middle of the paths and minimal discrepancies between height elevations of connecting slabs. (Doc. 52 ¶ 15; Doc. 69 ¶ 15).

Prior to the date of the alleged fall, Harris was aware of the one (1) inch differential in the sidewalk because the sidewalks at USP-Allenwood were in various states of settlement, leaving "areas of height differentials including areas of uneven downgrade and walkways," and Harris further claimed knowledge of other inmates and correctional officers who had suffered similar falls. (Doc. 52 ¶ 16; Doc. 69 ¶ 16). Harris clarifies that he "never alleges that he fell[,]" rather, he "only stumbled on uneven sidewalk and twisted his foot/ankle." (Doc. 69 ¶ 16).

Harris submitted fourteen declarations from other inmates of USP-Allenwood. (Doc. 52 ¶ 17; Doc. 69 ¶ 17). Of those fourteen declarations, eleven state that the sidewalks at USP-Allenwood were in a state of general disrepair—("[t]he walkways throughout USP Allenwood have been hazardous paths to walk by being damaged, cracked, broken, uneven and raised to name a few."). (*Id.* ¶ 18).

6

Harris also submitted a Declaration from inmate Arthur Smith, who claims he fell over a similar two-inch sidewalk discrepancy in 2018. (Doc. 52 ¶ 19; Doc. 69 ¶ 19). Harris maintains that inmate Arthur Smith fell in the same area that he did. (Doc. 69 ¶ 19).

Joshua M. Bowers, a Federal Bureau of Prisons ("BOP") Senior CLC Attorney, reviewed the BOP SENTRY database, a computerized index of all administrative remedies and appeals, for injuries related to a sidewalk fall in the five years prior to 2019. (Doc. 52 ¶ 20; Doc. 69 ¶ 20). Bowers found two instances of sidewalk related falls reported at USP-Allenwood from 2014 through 2019. (*Id.* ¶ 21). Harris counters that his report is "insufficient." (Doc. 69 ¶ 21). Harris' alleged fall and injury was included in the two complaints located in the SENTRY system. (Doc. 52 ¶ 22; Doc. 69 ¶ 22). Bowers also identified one (1) additional complaint related to a sidewalk fall at USP-Allenwood in 2018. (*Id.* ¶ 23). The United States maintains that no other sidewalk related falls and/or injuries were reported from 2014 through 2019. (Doc. 52 ¶ 24). Harris believes there are other injuries and administrative remedies in the report "with insufficient/incomplete information to establish whether or not a 'fall' was involved." (Doc. 69 ¶ 24).

### III. Legal Standard

Through summary adjudication, the court may dispose of those claims that do not present a "genuine dispute as to any material fact." FED. R. CIV. P. 56(a). "As to materiality, . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing

7

law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The party moving for summary judgment bears the burden of showing the absence of a genuine issue as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once such a showing has been made, the non-moving party must offer specific facts contradicting those averred by the movant to establish a genuine issue of material fact. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990). Therefore, the non-moving party may not oppose summary judgment simply on the basis of the pleadings, or on conclusory statements that a factual issue exists. *Anderson*, 477 U.S. at 248. "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record . . . or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1)(A)-(B). In evaluating whether summary judgment should be granted, "[t]he court need consider only the cited materials, but it may consider other materials in the record." FED. R. CIV. P. 56(c)(3). "Inferences should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir.1992), *cert. denied* 507 U.S. 912 (1993).

However, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380, 127 S. Ct. 1769, 1776, 167 L. Ed. 2d 686 (2007). If a party has carried its burden under the summary judgment rule,

> its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact. When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.

*Id.* (internal quotations, citations, and alterations omitted).

## IV. Discussion

The United States argues that it is entitled to summary judgment on the following grounds: (1) Harris knew of the defect; (2) the harm to Harris from the defect was not reasonably foreseeable; and (3) Harris could have avoided the specific area of the sidewalk. (Doc. 53, pp. 18-35).

Courts sitting in Pennsylvania uniformly apply Pennsylvania law when slip and fall accidents occur in the Commonwealth. *See, e.g.*, *Nw. Mut. Life Ins. Co. v. Babayan*, 430 F.3d 121, 139 (3d Cir. 2005) (applying Pennsylvania law to a slip and fall case); *Moultrey v. Great A & P Tea Co.*, 281 Pa.Super. 525, 422 A.2d 593 (Pa. Super. 1980) (same). Under Pennsylvania law, four elements are needed to establish negligence: (1) a duty or obligation

9

recognized by the law, requiring the actor to conform to a certain standard of conduct for the protection of others against unreasonable risks; (2) a failure to conform to the standard required; (3) a causal connection between the conduct and the resulting injury; and (4) actual loss or damage resulting in harm to the interests of another. *Babayan*, 430 F.3d at 139. "The standard of care a possessor of land owes to one who enters upon the land depends upon whether the person entering is a trespasser, licensee, or invitee." *Carrender v. Fitterer*, 503 Pa. 178, 469 A.2d 120, 123 (Pa. 1983). Under Pennsylvania law, inmates are treated as invitees. *Wilkerson v. United States*, 2010 WL 1462542, *5 (M.D. Pa. Apr. 9, 2010). Regarding conditions on the land which are either known to or discoverable by the possessor, the possessor is subject to liability only if he:

> (a) knows or by the exercise of reasonable care would discover the condition and should realize that it involves an unreasonable risk of harm to such invitee; and
>
> (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it; and
>
> (c) fails to exercise reasonable care to protect them against the danger.

*Carrender*, 469 A.2d at 123 (quoting Restatement (Second) of Torts § 343). If "both the condition and the risk are apparent to and would be recognized by a reasonable man, in the position of the visitor, exercising normal perception, intelligence and judgment," then under Pennsylvania law there is no liability. *Id.* Further, "the law of Pennsylvania does not impose liability if it is reasonable for the possessor to believe that the dangerous condition would be

obvious to and discovered by the invitee." *Atkins v. Urban Redev. Auth. of Pittsburgh*, 489 Pa. 344, 414 A.2d 100, 104 (Pa. 1980) (quoting *Palenscar v. Michael J. Bobb, Inc.*, 439 Pa. 101, 266 A.2d 478, 480 (Pa. 1970)).

First, the United States argues that Harris knew of the defect prior to the date of the alleged incident. (Doc. 53, pp. 22-27). "A danger is deemed to be 'obvious' when 'both the condition and the risk are apparent to and would be recognized by a reasonable man, in the position of the visitor, exercising normal perception, intelligence, and judgment.'" *Carrender*, 469 A.2d at 123 (quoting Restatement § 343A cmt. b). "For a danger to be 'known, it must not only be known to exist, but ... also be recognized that it is dangerous, and the probability and gravity of the threatened harm must be appreciated.'" *Id*. at 124 (quoting Restatement § 343A cmt. b). Generally, "[t]he location of the accident is the most relevant consideration, because no duty exists if the invitee knows: (1) the actual conditions; (2) the activities carried on; and (3) the dangers involved in either." *Campisi v. Acme Markets, Inc.*, 915 A.2d 117, 120-21 (Pa. Super. Ct. 2006) (citing Restatement § 343 cmt. e).

"It is hornbook law in Pennsylvania that a person must look where he is going." *Graham v. Moran Foods, Inc.*, No. 11-239, 2012 WL 1808952, at *4 (E.D. Pa. May 18, 2012) (quoting *Villano v. Sec. Sav. Ass'n*, 407 A.2d 440, 441 (Pa. Super. Ct. 1979)); *see also Rogers v. Max Axen, Inc.*, 16 A.2d 529, 529 (Pa. 1940) ("[W]here one is injured as the

11

result of a failure on his part to observe and avoid an obvious condition which ordinary care for his own safety would have disclosed, he will not be heard to complain.").

The United States has submitted the declaration of Charles Willoughby, the Complex Facility Manager at USP-Allenwood. (Doc. 52-3). Mr. Willoughby provided photographs of the condition of the sidewalks in front of Unit 2, which were uploaded to the BOP system on June 18, 2020. (Doc. 52-3, Attachments A and B). The photographs reveal concrete walkways, approximately ten feet in width, surrounded by grass, with slight erosion in the middle of the paths and small discrepancies between height elevations of connecting slabs. (*Id.*; Doc. 52 ¶ 15; Doc. 69 ¶ 15). Harris acknowledges that he knew of the sidewalk's condition prior to the alleged incident and that there were "areas of height differentials including areas of uneven downgrade and walkways." (Doc. 1 ¶¶ 1-3, 6; Doc. 69 ¶ 16). And Harris submitted declarations of fourteen inmates, wherein they state that the sidewalks at USP-Allenwood were in a state of disrepair. (Doc. 23). It is clear that Harris was aware of the condition of the sidewalk.

The United States also submitted the declaration of Nathaniel Yarnell, Supervisor of Education at FCC-Allenwood. (Doc. 52-2). Mr. Yarnell explains that Harris was scheduled to attend the "VT Business Info Process" class on Tuesday through Friday, between January 3, 2019 and July 26, 2019. (*Id.* ¶ 4). Mr. Yarnell confirms that Harris attended the class on February 1, 5, 6, 21, 22, 28 and March 1, 2019. (*Id.* ¶ 5). Thus, Harris knew full

well the extent of the condition of that sidewalk as he had traveled on it many times while walking to and from the education department.

The parties agree that Harris fell on the sidewalk in the vicinity of Unit 2, that Harris knew of the sidewalk's condition prior to the date of the alleged incident, and that he traversed the same sidewalk every day—including twice each time he went to the education department. However, as noted by the Third Circuit in its opinion remanding this matter, "[e]ven if the sidewalk differential were known or obvious to Harris, the Government would still be liable if it should have anticipated the harm despite such knowledge or obviousness." *Harris*, 2022 WL 4533852, at *1 (citations omitted).

The United States argues that Harris' fall was not foreseeable because the defect was trivial and there were no other reported complaints. (Doc. 53, pp. 27-34). An FTCA claimant must show "the government act or omission, if committed by a private person, would breach an independent state law duty." *Bosco v. United States,* 164 F. App'x 226, 229 (3d Cir.2006). The pedestrian has the burden of proving the existence of a defective condition and the possessor's actual or constructive knowledge of the condition prior to the accident. *Kardibin v. Associated Hardware,* 284 Pa.Super. 586, 426 A.2d 649, 652 (Pa. Super. 1981).

While landowners have a duty to maintain sidewalks in a reasonably safe condition, there is no duty to protect a pedestrian from any and all accidents. *See Davis v. Potter*, 340 Pa. 485, 17 A.2d 338, 339 (Pa. 1941). Rather, "[p]roperty owners must maintain their

sidewalks so that they do not present an unreasonable risk of harm to pedestrians." *Mull v. Ickes*, 994 A.2d 1137, 1140 (Pa. Super. Ct. 2010) (citing *Bromberg v. Gekoski*, 189 A.2d 176, 177 (Pa. 1963); *German v. City of McKeesport*, 8 A.2d 437, 440 (Pa. Super. Ct. 1939). Pennsylvania courts have adopted what is known as the trivial defect doctrine. Under this doctrine, "an elevation, depression, or irregularity in a sidewalk or in a street or highway may be so trivial that, as a matter of law, courts are bound to hold that there was no negligence in permitting such depression or irregularity to exist." *Mull*, 994 A.2d at 1140; *Davis*, 17 A.2d at 339. Thus, if a court concludes that a defect in a walking surface is so trivial that no reasonable juror could impose liability on the business owner, then summary judgment is appropriate. *Shaw v. Thomas Jefferson Univ.*, 80 A.3d 540, 544 (Pa. Commw. Ct. 2013); *Davis*, 17 A.2d at 339 (finding that "the alleged defect was so trifling ... that the court, as a matter of law, is bound to hold that there was no negligence in permitting it to exist"). However, unless a defect is "obviously trivial," the determination of whether the defect should render a business owner liable "must be submitted to a jury." *Breskin v. 535 Fifth Ave.*, 381 Pa. 461, 113 A.2d 316, 318 (Pa. 1955).

Whether a defect is sufficient to render the business owner liable is determined in light of the circumstances of a particular case. *Shaw*, 80 A.3d at 543 (citing *Breskin*, 113 A.2d at 318); *see also McGlinn v. City of Phila.*, 322 Pa. 478, 186 A. 747, 748 (Pa. 1948). However, "'no definite or mathematical rule can be laid down as to the depth or size of a sidewalk depression' to determine whether the defect is trivial." *Mull*, 994 A.2d at 1140

14

(quoting *Breskin*, 113 A.2d at 318); *see also Shaw*, 80 A.3d at 543 (noting that there is "no mathematical or bright-line rule" for determining whether a defect is trivial). Rather, "[e]ach case presents a unique set of circumstances that must be evaluated on an independent basis." *Shaw*, 80 A.3d at 545.

The United States cites to several cases where the alleged defect was found to be obviously trivial in nature and contends that Pennsylvania law renders the defect in this case trivial. (Doc. 53, pp. 29-31) (citing *Newell v. Pittsburgh*, 279 Pa. 202 (1924) (no liability for 1½ inch discrepancy at street crossing); *McGlinn v. City of Philadelphia*, 322 Pa. 478 (1936) (finding no liability where two abutting curb stones had a 1 ½ inch discrepancy); *Foster v. Borough of West View*, 328 Pa. 368 (1937) (holding no liability could attach for a uneven, rough, unpaved 2 inch step between curb and sidewalk); *Magennis v. City of Pittsburgh*, 42 A.2d 449 (1945) (no liability for 1 7/8 inch depression); *Cline v. Statler*, 34 Pa. D. & C. 289, 290 (Pa. C. P. 1997), *affirmed*, 726 A.2d 1073 (Pa. Super. 1998) (affirming grant of summary judgment for defendants where "portion of the sidewalk causing the fall was raised at least two to three inches from adjoining surfaces."); *Phillip v. Bracey's Supermarket, Inc.*, 29 Pa. D. & C. 5th 389, 394 (Pa. C. P. 2013) (finding defect which measured "1½ inches in width, 3 feet in length, with a ½ inch raised lip" was trivial)).

However, the Court's research has unearthed several cases that have determined that a one-inch elevation in a sidewalk does not warrant judgment in favor of the defendants as a matter of law. *See, e.g., Reinoso v. Heritage Warminster SPE, LLC.*, 108 A.3d 80, 87

(Pa. Super. Ct. 2015) (sidewalk having ⅝ of an inch height difference between sidewalk panels not a trivial defect as a matter of law); *Ivicic v. Best Buy*, 918 A.2d 797 (Pa. Super. Ct. 2006) (reversing grant of summary judgment and lower court determination that depression of one to three inches located in uneven parking lot was trivial defect); *Mull*, 994 A.2d at 1140 (reversing grant of summary judgment and trial court's finding that 1.5-inch-deep depression was trivial defect); *Melchiorre v. Lords Valley Xtra Mart*, 13 A.3d 973 (Pa. Super. Ct. 2010) (reversing grant of summary judgment where trial court found that a one-inch rise in elevation between asphalt and concrete pad at gas station was a trivial defect); *Hall v. Hess Corp.*, 2013 WL 3878572, at *2 (E.D. Pa. July 29, 2013) (defect in gas station lot where plaintiff tripped was ⅝ of an inch deep and not trivial as a matter of law); *Murillo v. United States*, 2010 WL 786542 (E.D. Pa. Mar. 8, 2010) (denying summary judgment and declining to find that one-inch gap between brick pavers and pavement was trivial); *Lowe v. Pirozzi*, 2006 WL 1147238, at *6 (E.D. Pa. April 26, 2006) (it is a jury question whether a concrete portion of sidewalk raised at least an inch and a half, which tended to rise one or two inches under certain weather conditions, and was located on a pedestrian path, is obviously trivial); *Ozer v. Metromedia Restaurant Group*, 2005 WL 525400, at *7 (E.D. Pa. March 7, 2005) (it is a jury question whether a ridge of approximately seven-sixteenths to three-fourths of an inch, and within six inches from sidewalk curb, is a trivial defect). Here, the defect in the sidewalk was not so obviously trivial, so as to relieve the United States of

its duty of care to Harris. It is a question for the finder of fact whether the alleged defect in the sidewalk was trivial.

The United States also argues that it could not anticipate Harris' fall because there was only one other reported incident in the area where he fell. The United States has provided the declaration of BOP Senior Attorney Joshua Bower. (Doc. 52-4). Attorney Bower reviewed the administrative remedy database for injuries related to sidewalk falls from 2014 to 2019. (*Id.* ¶¶ 6-12). He reported that there were two instances of sidewalk-related falls reported at USP-Allenwood from 2014 through 2019, including Harris' complaint. (*Id.* ¶¶ 11-12). The first relevant administrative remedy, number 935991-F1, was filed in 2018 by inmate Arthur Smith wherein he "claims [he] fell on sidewalk" which occurred "in the vicinity of Unit 2" when he "tripped over a 2-inch elevation in the sidewalk and fell to the pavement." (*Id.* ¶ 11; Doc. 52-4, Attachment E). On April 4, 2018, the remedy was rejected as untimely. (*Id.*). Harris alleges that he fell on February 22, 2019, on the sidewalk in front of Unit 2. He filed administrative remedy number 97358-F1 related to the sidewalk fall. (*Id.* ¶ 12; Doc. 52-4, Attachment F). The remedy was closed on April 18, 2019. (*Id.*). This grievance history reveals that both inmates submitted an administrative remedy related to falling on the sidewalk near Unit 2, and that inmate Arthur Smith submitted his administrative remedy before Harris' administrative remedy, thus alerting the United States—prior to Harris' fall—that a fall had occurred on the sidewalk near Unit 2.

Whether the United States could have anticipated Harris' fall based on one other complaint is a question for the fact finder.

Finally, the United States argues that Harris could have voluntarily avoided the specific area of the sidewalk that caused his fall. (Doc. 53, pp. 34-36). The satellite image of the USP-Allenwood campus shows the route that Harris had to travel to access services during open moves. (Doc. 52-1, Attachment A). Further examination of the photograph of the sidewalk reveals that there is a grassy area on both sides of the cement slabs. (Doc. 52-3, Attachments A and B). Harris apparently could have avoided the sidewalk by taking a different route or walking on the grass around the main sidewalk. However, Harris argues that he could not choose an alternate route because he was only allotted ten (10) minutes to reach his destination and walking on grass is "out of bounds" and not an option. (Doc. 48, pp. 3-4; Doc. 70 ¶¶ 9-10; Doc. 76, p. 2). There exists a factual dispute as to whether Harris could have avoided this area of the sidewalk.

This is a case of whether the dangerous condition of sidewalk was known and obvious, whether the harm to Harris from the defect was reasonably foreseeable, and whether Harris could have avoided the area. The Court finds that while Harris walked on the sidewalk in question enough times prior to his fall to potentially know the alleged danger the sidewalk presented, the questions as to whether Harris could have avoided the area and whether the alleged defect was obviously trivial in the context of the conditions confronted by Harris are ones best left for the jury to decide. Considering the evidence in the light most

favorable to Harris as the non-movant, and drawing all reasonable inferences in Harris' favor, the Court must deny the United States' motion.

## V. Conclusion

The United States' motion (Doc. 47) for summary judgment will be denied and Harris' motion (Doc. 48) for summary judgment will be deemed withdrawn. A separate Order shall issue.

Robert D. Mariani
United States District Judge

Dated: February __8__, 2024